Argued and submitted September 4, 2003, decision of the Court of Appeals
affirmed; order of the circuit court reversed July 29, 2004

STATE OF OREGON,
*Respondent on Review,*

*v.*

COY RANDELL SNOW,
*Petitioner on Review.*

(CC 99CR0872; CA A110840; SC S49504)

94 P3d 872

Ingrid A. Macfarlane, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the briefs was David E. Groom, Acting Executive Director.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

### KISTLER, J.

While a police officer was in hot pursuit, defendant left his automobile behind and fled on foot. The question that this case presents is whether the officer could search defendant's automobile without a warrant to determine defendant's identity. The Court of Appeals held that the officer could do so, reasoning that the search fell within the automobile exception to the warrant requirement. *State v. Snow*, 179 Or App 222, 39 P3d 909 (2002). We affirm the Court of Appeals decision but on different grounds.

Just before noon on September 20, 1999, Deputy Sheriff Randy Lucas was driving on Highland Avenue in Grants Pass. A car turned onto Highland Avenue going the opposite direction. Lucas noticed the car because it began accelerating quickly as it went the other way. As Lucas explained, the car was "laying rubber" and continued to accelerate. Defendant was driving, and Lucas was able to see defendant's face as he passed him. Lucas did not recognize defendant, nor was he able to obtain any other information that would help him identify defendant.

Lucas turned his car around and activated his overhead lights just as defendant's car turned off Highland Avenue onto another street. Lucas turned onto that street but lost sight of defendant's car. A pedestrian pointed in the direction that defendant had gone, and Lucas continued in pursuit. When Lucas came to the next intersection, another citizen indicated that defendant had gone west on A Street. At the corner of A and Dimmick streets, a third citizen told Lucas that he had seen defendant's car go through a stop sign at 40 miles per hour or faster and then turn into a parking lot on A Street.

Lucas pulled into the parking lot and saw defendant's car "nosed up a little bit sideways into a parking spot." At that point, approximately one to two minutes had passed since Lucas first saw defendant's car. The hood of defendant's car was hot, the car was unlocked, and defendant was nowhere to be found. Lucas and at least one other officer searched the immediate area for defendant but could not find him. An area resident told Lucas that "a man had been there

and ran through their apartment complex" and that "this is the third time the man had been chased by the cops." Lucas testified that, as the officers were "looking around * * * and trying to find * * * a place [where] somebody could run and hide," he heard over his radio that a woman had called in to report a man "dashing through her house."

At that point, the officers returned to defendant's car. Lucas ran a check on the license plate number and learned that it belonged to a woman. Lucas and the other officers then searched the car "[t]o try and identify the person driving it." Doing so, Lucas reasoned, would "[g]ive us an address or a location to go check * * * to help us locate the person." He also believed that knowing the person's identity would increase officer safety because he might learn "what kind of person we're dealing with." Lucas testified, without contradiction, that it would have taken three to four hours to get a warrant to search the car.

Inside the car, Lucas found a shotgun underneath some clothing on the rear seat floorboard. Then he found a backpack containing a checkbook. Inside the checkbook, he found two identification cards, one from Oregon and another from California. Both bore defendant's name and picture. Lucas recognized the picture as that of the man he had seen earlier driving the car. Later investigation revealed that defendant had a felony conviction.

The police did not apprehend defendant that day. They arrested him later, and a grand jury indicted him for reckless driving and being a felon in possession of a weapon. Before trial, defendant filed a motion to suppress the evidence that the officers had found in the car, asserting that the officers had violated Article I, section 9, of the Oregon Constitution when they searched his car without a warrant. Defendant did not contend that the search had violated the federal constitution.

The trial court granted defendant's motion. The court reasoned that, even though Lucas had probable cause to arrest defendant for reckless driving and eluding an officer, neither the "automobile exception" nor the exigent circumstances exception to the warrant requirement applied. In determining that no exigency existed, the trial court reasoned that the eyewitness observations of defendant obviated

the need to search the car for identification. It also observed that "the 'manhunt' in this case lasted a very short time." The court concluded that, without a warrant or an exception to the warrant requirement, the search of defendant's car violated Article I, section 9. The Court of Appeals reversed, holding that the automobile exception applied. 179 Or App at 224. We need not decide whether the automobile exception applies in these circumstances. We hold instead that exigent circumstances excused the need to obtain a warrant.

The governing principles are well established. Under Article I, section 9, "[w]arrantless entries and searches of premises are *per se* unreasonable unless they fall within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). One of those exceptions is the emergency/exigent circumstances exception. *Id.* That exception requires both probable cause and an exigency. *Id.* Here, defendant does not dispute that the officers had probable cause to believe that he had committed a felony,[1] nor does he dispute that the officers had probable cause to believe that they would find evidence of his identity in his car. Rather, defendant argues that no exigent circumstance existed that justified the officers' failure to obtain a warrant.[2]

On that point, this court has explained that "[a]n exigent circumstance is a situation that requires police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Here, the officers sought "to forestall a suspect's escape." Defendant was fleeing from the police, and the situation required the officers to act quickly to prevent his escape.[3] *See State v. Roberts*, 249 Or 139, 143, 437 P2d 731

---

[1] *See* ORS 811.540(1)(b)(A) (defining elements of eluding officer).

[2] In analyzing that issue, we accept the trial court's findings of historical fact, which are supported by evidence in the record. *See State v. Matsen / Wilson*, 287 Or 581, 585, 601 P2d 784 (1979) (stating standard of review). The question whether those findings establish either probable cause or exigent circumstances presents a question of law. *Id.*

[3] In contending that no exigency existed, defendant argues that there was no danger that he would destroy evidence in the car or pose a risk of danger to life or serious damage to property. While true, those arguments provide no reason to question the officer's stated reason for searching the car—to forestall defendant's escape.

(1968) (holding alternatively that officers in hot pursuit need not obtain warrant before searching car that defendant left behind as he fled on foot).

This is not a case in which the officers' delay or failure to pursue a suspect undercuts any claim of an exigency. *See Bridewell*, 306 Or at 236 (officers' delay in searching for missing defendant "significantly dissipated any possible exigency"); *cf. Welsh v. Wisconsin*, 466 US 740, 753, 104 S Ct 2091, 80 L Ed 2d 732 (1984) (discounting state's hot pursuit argument "because there was no immediate or continuous pursuit of the petitioner from the scene of a crime"). Rather, throughout the relevant period, the officers were continuing their pursuit of defendant.

To be sure, when Lucas found defendant's car, he and another officer first searched the immediate area in an effort to find defendant. But the officers' graduated and appropriate actions in searching the area around defendant's car before searching the car for evidence of identity does not undercut the state's claim of exigency. *See Stevens*, 311 Or at 130 (explaining that officers' actions in searching farm did not undercut claim that exigent circumstances justified searching defendant's house). Finally, we note that the officers' search was limited to the exigency that justified it. *See Stevens*, 311 Or at 130 (stating limitation). They reasonably determined that evidence of defendant's name and address could aid them in apprehending him and limited their search of the car accordingly.

It would appear that the officers' search came squarely within the exigent circumstances exception to the warrant requirement. *See Roberts*, 249 Or at 143 (upholding warrantless search in similar situation). Defendant, however, advances three arguments why no exigency existed here. He notes, as the trial court did, that two people had seen him as he fled. He contends that, given those eyewitnesses, the officers had no need for additional identification. An eyewitness's identification of a fleeing suspect, even if accurate, conveys only general information. It does not carry with it the same level of detailed information that a suspect's name and address do. The fact that other limited information

about defendant was available does not mean that the officers had no right to seek more specific information that would help them apprehend defendant.

■    Defendant also notes that the officers did not apprehend him immediately after they obtained his identification. That proves, he contends, that obtaining his identification was neither likely nor necessary to prevent his escape. The fact that obtaining defendant's identification did not result in his immediate capture does not establish that the officers were not justified in looking for it. The proper focus is on the reasonableness of the officers' actions at the time they took them in response to the exigency, not on the results of those actions. *See State v. Miller*, 300 Or 203, 229, 709 P2d 225 (1985) (focusing on reasonableness of officer's belief when he entered room, rather than results of entry). Judged from that perspective, the officers' decision to search for identification to help apprehend defendant was lawful.

■    Defendant argues finally that, once the officers learned that someone else owned the car, there was no need to search the car for his identification. He contends that the officers should have called the owner to learn his identity. Defendant's argument assumes that the officers would have ready access to the owner's telephone number, that the owner would have been available if they had called her, and that she would have cooperated with them if they had reached her. Officers need not exhaust every conceivable means, no matter how speculative, to avoid a claim that no exigency existed. *See State v. Girard*, 276 Or 511, 555 P2d 445 (1976) (explaining that, "[i]n the exigencies of the moment, the officers could not reasonably be expected to put fine weights in the scale in weighing the chances of securing the house or of losing their quarry"). Here, the need for immediate action to prevent defendant's escape justified the officers' decision to search his car for identification.

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed.