Argued and submitted May 8, decision of Court of Appeals reversed;
order of circuit court reversed, and case remanded to circuit court
for further proceedings December 21, 2006

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## KATHY LOUISE MEHARRY,
*Respondent on Review.*

(CC CFH030171; CA A124222; SC S52988)

149 P3d 1155

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John J. Tyner, III, Tyner & Associates, Hillsboro, argued the cause and filed the brief for respondent on review. With him on the brief was Annetta L. Spicer, Kuhn & Spicer, Hermiston.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs, Balmer, and Kistler, Justices.**

KISTLER, J.

Durham, J., concurred and filed an opinion.

** Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Walters, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

Police officers searched defendant's van without a warrant after arresting her for driving under the influence of intoxicants. At issue in this case is whether that search came within an exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. The trial court concluded that it did not, and the Court of Appeals affirmed. *State v. Meharry*, 201 Or App 609, 120 P3d 520 (2005). For the reasons set out below, we reverse.

We state the facts consistently with the trial court's factual findings and its decision granting defendant's motion to suppress. *See State v. Juarez-Godinez*, 326 Or 1, 7, 942 P2d 772 (1997) (stating standard). While driving in the city of Umatilla, the local fire chief, Michael Roxbury, saw defendant driving her van erratically, failing to maintain her lane, and nearly rear-ending a car that had stopped for a pedestrian. He also noticed a child in the back seat, moving from one side of the van to the other. He trailed defendant and, while doing so, called the police department on his cell phone to report his observations. Defendant eventually pulled into the parking lot of a convenience store, the Zip Trip, missing the driveway and driving over the curb as she entered. She parked, and Roxbury pulled into the parking lot beside her.

Police Officer Brian Tarvin responded to Roxbury's call. As he was driving out of the police station parking lot, he saw defendant and Roxbury pass in front of him. Tarvin watched as defendant's van pulled into the Zip Trip parking lot, which was about one and one-half blocks from the police station. Tarvin followed and pulled into the Zip Trip parking lot in time to see defendant get out of her van and "stagge[r]" into the store. He parked behind defendant's van, noticed the child in the van, and then spoke briefly with Roxbury, who again relayed what he had observed.

Tarvin followed defendant into the Zip Trip and found her hunched over the counter with her head down. He described her as being "lethargic, dazed, [and] very stuporous," swaying back and forth, and moving in a slow, deliberate manner. Her speech was "slow, slurred, almost incoherent," and she had "difficulty putting her words together." He

also noticed blood trickling down her right hand from a puncture wound near her little finger. Tarvin asked defendant if she had been taking any medications. After initially denying doing so, defendant admitted that she had taken a number of prescription medications.

Tarvin told defendant that he believed she was under the influence of intoxicants and asked if she would perform some field sobriety tests in the parking lot outside the store. Having agreed to perform the tests, defendant failed each of them. Defendant told Tarvin that she had not been drinking, and he could not smell alcohol on her breath. However, he believed that she was otherwise impaired and placed her under arrest for driving while under the influence of intoxicants.

After arresting defendant, Tarvin searched her and found a syringe in her pocket. He then searched the inside of her van, including its glove box and center console, for "[a]ny substance which would impair a person's ability to drive a motor vehicle." Inside the van, Tarvin found more syringes and several prescription medications, some of which had been prescribed to other people. Based in part on the evidence found in the van, the state charged defendant with 11 counts of tampering with drug records, ORS 167.212; two counts of possession of a controlled substance, ORS 475.992 (2003), *amended by* Or Laws 2005, ch 708, § 39, and *renumbered as* ORS 475.980 (2005); seven counts of tampering with physical evidence, ORS 162.295; driving under the influence of intoxicants, ORS 813.010; and recklessly endangering another person, ORS 163.195.

■ Before trial, defendant moved to suppress the evidence found in the van, arguing that Tarvin had violated her rights under the state and federal constitutions by searching the van without a warrant. The trial court granted defendant's motion, and the state appealed. The Court of Appeals affirmed the trial court's order, concluding that the warrantless search did not fall within any exception to the warrant requirement and that the search, therefore, violated defendant's rights under Article I, section 9, of the Oregon Constitution. *Meharry*, 201 Or App at 617-18. We allowed review

and now conclude that Tarvin's search fell within an exception to the warrant requirement, making the search of the van permissible under Article I, section 9.

 Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Under that section, a search conducted without a warrant is deemed unreasonable unless it "fall[s] within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). One exception—the exigent circumstances exception—allows the police to conduct a search without a warrant if the search is both supported by probable cause and conducted under exigent circumstances. *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). Exigent circumstances include, among other things, situations in which immediate action is necessary to prevent the disappearance, dissipation, or destruction of evidence. *See State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991) (explaining that "[a]n exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence").

In *State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986), this court recognized, as a subset of the exigent circumstances exception, an "automobile exception" to the warrant requirement. The court reasoned that the mobility of a vehicle, by itself, creates an exigency " 'because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " *Id.* at 275-76 (quoting *Carroll v. United States*, 267 US 132, 153, 45 S Ct 280, 69 L Ed 2d 543 (1925)). Recognizing the difficulty in predicting whether a mobile vehicle—and any evidence inside that vehicle—will remain in the same location once police officers relinquish control over it, the court sought to provide police officers with a "clear guideline[ ] by which they can gauge and regulate their conduct." *Id.* at 277. It held that police officers may search a vehicle if they have "probable cause to believe that a lawfully stopped automobile which was mobile

at the time of the stop contains contraband or crime evidence."[1] *Id.*

In this case, Tarvin had probable cause to search defendant's van for evidence of drug use, and defendant does not argue otherwise.[2] Because Tarvin had probable cause to search the van, the only issue that remains is whether the van was mobile and thus presented an exigent circumstance. This court has had few occasions to consider that issue. Ordinarily, when the police search a vehicle, they do so after stopping it on the side of the road. In those instances, this court has declared that such a vehicle is mobile for the purposes of the automobile exception because it was moving when the officer stopped it and nothing demonstrated that the vehicle would not be mobile once the officer relinquished control over it. *See State v. Kosta*, 304 Or 549, 555, 748 P2d 72 (1987) (recognizing that vehicle's inherent mobility creates exigency); *State v. Bennett*, 301 Or 299, 301, 721 P2d 1375 (1986) (same); *Brown*, 301 Or at 278 (same).

This court's decision in *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986), represents the only occasion on which this court has analyzed that issue outside of the context of a roadside stop. In *Kock*, the police had the defendant's vehicle under surveillance while it was parked in the parking lot of a store where the defendant worked. 302 Or at 31. They watched the defendant leave the store, put a package in his

---

[1] That mobility requirement is specific to the Oregon Constitution. As this court noted in *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986), under the Fourth Amendment to the United States Constitution, the police may search a stationary vehicle solely on the basis of probable cause. *See California v. Carney*, 471 US 386, 394-95, 105 S Ct 2066, 85 L Ed 2d 406 (1985) (holding that a warrantless search of a parked motor home was justified under the automobile exception to the Fourth Amendment's warrant requirement because the search was supported by probable cause).

[2] Tarvin had received a report from Roxbury that he had seen defendant driving her van erratically. Tarvin had watched defendant pull her van into the Zip Trip parking lot and then "stagger" into the store. Once in the store, he watched her sway back and forth as she spoke in a "slow, slurred, almost incoherent" manner, and he noticed a fresh puncture mark near her little finger. She admitted to him that she had taken a number of prescription medications. After she failed the field sobriety tests, Tarvin arrested and searched her, finding a syringe but none of the drugs that she claimed to have used. At that point, Tarvin had probable cause to believe that the van contained evidence that defendant had driven the van under the influence of intoxicants. *See State v. Nagel*, 320 Or 24, 32, 880 P2d 451 (1994) (stating probable cause standard).

vehicle, and return to work. *Id.* at 31-32. Suspecting that he had stolen property from the store, the police searched the defendant's vehicle, finding a package containing diapers. *Id.* at 32. The state charged the defendant with theft, and the defendant moved to suppress the evidence seized from his vehicle, arguing that the search had violated his rights under Article I, section 9. *Id.*

This court concluded that the "automobile exception" did not justify the warrantless search in that case. *Id.* at 33. Although the court assumed that the police had probable cause for the search, it held that, because the vehicle had been "parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime * * *," the vehicle was not mobile for the purposes of the automobile exception. *Id.*

Applying this court's decisions in *Brown* and *Kock*, the trial court in this case ruled that the van was not mobile when the police first encountered it. The Court of Appeals agreed. *Meharry*, 201 Or App at 618. It reasoned that, because defendant's van was parked when Tarvin first encountered her in the Zip Trip, the van was not mobile for purposes of the automobile exception. *Id.* The Court of Appeals explained:

> "The 'encounter' in this case first occurred when Tarvin confronted defendant inside the store. At that point in time, there was no exigency relating to the mobility of the car."

*Id.*

We think that the Court of Appeals' reasoning is problematic in two respects. First, we agree with the state that Tarvin first encountered defendant's van in connection with a crime when he saw her drive by the police station. At that point, the van was mobile and Roxbury's reported observations gave Tarvin reasonable suspicion to believe that defendant was driving under the influence of intoxicants. *See State v. Lichty*, 313 Or 579, 584-85, 835 P2d 904 (1992) (stating standard for reasonable suspicion and recognizing that officer may rely on report from named citizen). Second, the Court of Appeals' reasoning fails to give effect to the exigency that ordinarily justifies the warrantless search of a vehicle.

As this court explained in *Brown*, the exigency that permits the police to conduct a warrantless search of a mobile vehicle arises from the fact that the " 'vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " *Brown*, 301 Or at 275 (quoting *Carroll*, 267 US at 153).

In this case, Tarvin saw defendant drive her van into the Zip Trip parking lot; he followed after her to the Zip Trip and parked his police car behind her van. He spoke briefly with defendant in the store, conducted field sobriety tests, arrested her for driving under the influence of intoxicants, and then searched the van. The search occurred shortly after he had observed the van in motion and had parked his police car behind her van. Nothing occurred between that time and the search that rendered the van immobile. Tarvin had not impounded the van, and there was no physical or mechanical impediment to the van's being driven away once Tarvin relinquished control over it. In short, the van remained mobile and the exigency continued.

Defendant argues, however, that no exigency existed under the reasoning in *Brown* because Tarvin did not stop her. It is true, as defendant notes, that Tarvin did not effect a stop, as the officer did in *Brown*, by causing defendant to pull her van over to the side of the road and bring it to a stop. Tarvin, however, did stop defendant when he followed her into the Zip Trip parking lot and parked his police car behind her van, preventing her from leaving once she finished her errand. *See State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991) (defining when a "seizure" occurs for the purpose of Article I, section 9). The issue that defendant's argument thus poses is whether stopping an otherwise mobile car from resuming its journey (as Tarvin did here) differs for purposes of the automobile exception from causing a moving car to come to a stop (as the officer did in *Brown*).

We cannot see a difference, for constitutional purposes, between the two situations. The fact that Tarvin did not have time to effectuate a stop before defendant pulled into the Zip Trip parking lot but instead effectuated a stop by preventing defendant from continuing her journey does not make her van any less mobile, nor does it make it any less

likely that her van—and any evidence inside the van—could have been moved once Tarvin relinquished control over it. Rather, the van remained mobile, and the circumstances in this case were as exigent as they were in *Brown*. Because the same exigency that justified the warrantless search of the defendant's car in *Brown* justified Tarvin's search of defendant's van in this case, we hold that the rule announced in *Brown* extends to this case.[3]

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring.

I join the majority's decision. Given this court's opinion in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), the "mobility" of defendant's van created an exigent circumstance that supported the officer's decision to search it without a warrant. The presence in the van of an unsupervised minor might have contributed to the exigency, or perhaps created another exigency, but the state did not argue those points below.

The proposition that Article I, section 9, of the Oregon Constitution allows the police to search every stopped vehicle in Oregon without a warrant based on a flexible criterion like "mobility" remains controversial. The *Brown* majority adopted that proposition to lend certainty to the decision-making process of law enforcement officers. That is, of course, a worthwhile goal. But, in my view, the *Brown* court's decision oversold the notion that it would lead to certainty. Whether a vehicle is "mobile," or *sufficiently* mobile under the particular facts to permit a warrantless search, can change with every stop.

The decision in *Brown* also understated the constitutional policy requiring a judicial examination of the particular facts to determine whether a particular search is reasonable. The one-size-fits-all rule of *Brown* for searching a

---

[3] To the extent that defendant argues that Tarvin's search violated her rights under the Fourth Amendment to the United States Constitution, our conclusion that the search was supported by probable cause brings the search within the Fourth Amendment's automobile exception. *Carney*, 471 US at 394-95.

citizen's property is difficult to harmonize with the state constitutional prohibition on searches that are not reasonable under all the particular circumstances.

Defendant asserts no argument that this court erred in deciding *Brown*. It is appropriate, therefore, to wait for a different case before taking up the questions that surround the *Brown* decision.

Accordingly, I concur.