On respondent's petition for reconsideration filed October 31, and appellant's response to petition for reconsideration filed November 8, reconsideration allowed; former opinion (245 Or App 119, 260 P3d 826) modified and adhered to as modified December 29, 2011, petition for review denied May 17, 2012 (352 Or 33)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

PRESSLEY DOWANE WIGGINS, JR.,
*Defendant-Respondent.*

Douglas County Circuit Court
08CR1481FE; A141607

270 P3d 306

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, for petition.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General, for response.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant petitions for reconsideration of our decision in *State v. Wiggins*, 245 Or App 119, 260 P3d 826 (2011), in which the state appealed a pretrial order suppressing evidence discovered in a warrantless search of defendant's car. We reversed the trial court, concluding that the search was justified by the automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. In doing so, we relied, in part, on this court's decision in *State v. Kurokawa-Lasciak*, 237 Or App 492, 239 P3d 1046 (2010) (*Kurokawa I*), which was subsequently reversed by the Supreme Court in *State v. Kurokawa-Lasciak*, 351 Or 179, 263 P3d 336 (2011) (*Kurokawa II*). Defendant contends that the Supreme Court's decision in *Kurokawa II* requires us to adopt a different analysis than the one that we applied in our previous opinion in this case. We write to disclaim any reliance on *Kurokawa I* and to clarify the basis for our decision.

We briefly summarize the facts. The police received a report of a verbal altercation in which one of the participants was heard saying that he was going to get a gun and would return. Defendant's car was seen leaving the place of the altercation. Fifteen minutes later, an officer located defendant's car, which was headed back toward the spot of the altercation, and initiated a traffic stop with two deputies acting as backup. As defendant was being stopped, he pulled his car into a private driveway; defendant apparently knew the owners of the property. Defendant admitted to the officer that he was involved in a verbal altercation but denied making any threats. He declined consent to search the car for firearms, and he was subsequently arrested for a parole violation.

Defendant was transported to jail by the officer. His car keys were left with the property owners, who were directed (by defendant) to contact his girlfriend to retrieve the car. The two deputies left the scene to further investigate the possibility that a gun was in the car. The car was left unattended for about 25 minutes; the car was locked, but a window was left down. The property owners were adamant that nobody had accessed the car during that time.

The deputies returned to the car believing they had probable cause that it contained a gun. They guarded the car while they sought a search warrant. Before a warrant was obtained, defendant's girlfriend arrived and demanded to take the vehicle. The deputies then searched the car and found a loaded gun and additional ammunition. Defendant was charged with crimes related to his possession of a firearm. Before trial, the court suppressed the evidence found during the search of defendant's car. The state appealed.

In our prior opinion, we explained that, under the automobile exception, police may conduct a warrantless search of a vehicle where (1) the vehicle is mobile at the time it is stopped by police or other governmental authority and (2) probable cause exists for the search of the vehicle. *Wiggins*, 245 Or App at 125 (citing *State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986)). In this case, there was no dispute that the police had probable cause. *Id.* at 126. Nor was there any real dispute about whether defendant's vehicle was "mobile" at the time of the stop; as defendant acknowledges on reconsideration, "the officers in this case did stop defendant's car while he was driving it." Instead, the dispute centered on whether the officers' temporary break in contact with the vehicle rendered it immobile for purposes of the automobile exception. We concluded that, because defendant's car was mobile when it was stopped by the officers, and "[n]othing occurred between the moment of the initial encounter and the time the officers searched defendant's car that rendered the vehicle immobile," the exception applied. *Id.* at 127.

In reaching that conclusion, we partly relied on the facts in *Kurokawa I*, where this court applied the automobile exception "[d]espite the lapse in time and apparent break in contact with the vehicle." *Id.* We also cited that case for the proposition that a vehicle need only be "operable" in order to be considered "mobile" for purposes of the automobile exception. *Id.* at 125. However, the latter point had no bearing on the disposition of the case.

Subsequent to our decision, the Supreme Court reversed *Kurokawa I*, rejecting the notion that any operational vehicle is "mobile" under the automobile exception.

*Kurokawa II*, 351 Or at 193. The court reaffirmed the principles that it had announced in its earlier cases, which did not permit the warrantless search of a vehicle merely because it was capable of mobility. *See State v. Meharry*, 342 Or 173, 149 P3d 1155 (2006); *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986); *Brown*, 301 Or 268. The court had drawn a "bright line," excluding from the automobile exception " 'any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime * * *.' " *Kurokawa II*, 351 Or at 190 (quoting *Kock*, 302 Or at 33) (emphasis omitted).

On reconsideration, defendant argues that his car was "parked, immobile, and unoccupied" at the time of the search and that "the fact that [the] car was known to be 'operable' at [that time] does not mean that it remained mobile." Thus, in defendant's view, his car had ceased to be mobile due to either the break in contact with the vehicle or to the general delay—"90 minutes or more"—between the initial stop and the time of the search.

The Supreme Court has not directly addressed when a "mobile" vehicle, stopped by police in connection with a crime, ceases to be mobile for purposes of the automobile exception of Article I, section 9.[1] Nonetheless, the court's decision in *Meharry*, 342 Or 173, is instructive. In that case, the police received a report that the defendant had been driving erratically. The police officer responding to the call saw the defendant pass in front of him as he left the police station. Before the officer stopped the defendant, the defendant

---

[1] We note that previous decisions do contain casual references to the timing of a search under the automobile exception. *See, e.g., Meharry*, 342 Or at 180 ("The search occurred *shortly after* [the officer] had observed the van in motion and had parked his police car behind her van." (Emphasis added.)); *Kock*, 302 Or at 33 ("Searches of automobiles that have *just* been lawfully stopped by police may be searched without a warrant * * * when police have probable cause to believe that the automobile contains contraband or crime evidence." (Emphasis added.)); *Brown*, 301 Or at 277, 278 (describing an "immediate" search of an automobile); *cf. State v. Zigler*, 100 Or App 700, 704-05, 788 P2d 484 (1990) (relying on a case decided under the Fourth Amendment to conclude that a warrantless search of an automobile must be commenced within a reasonable time, but noting that a delay may be reasonable where police need to perform other tasks before searching the automobile). Nonetheless, the Supreme Court has not expressly imposed any temporal limitation on searches conducted under the automobile exception. We decline to articulate any such limitation here.

pulled into a store parking lot and parked her vehicle. The officer pulled in behind her to prevent her vehicle from leaving. The officer followed the defendant into the store, observed facts suggesting that she was driving under the influence of intoxicants, and arrested her. He subsequently searched the defendant's vehicle and obtained evidence that the defendant sought to suppress. This court invalidated the search on the ground that the vehicle was not mobile at the time that the officer encountered the defendant in the store. *State v. Meharry*, 201 Or App 609, 618, 120 P3d 520 (2005). The Supreme Court reversed, concluding that the van was mobile at the time that it was first encountered. *Meharry*, 342 Or at 179-81. The court also observed:

> "Nothing occurred between [the time of the initial encounter] and the search that rendered the van immobile. [The officer] had not impounded the van, and there was no physical or mechanical impediment to the van's being driven away once [the officer] relinquished control over it. In short, the van remained mobile and the exigency continued."

*Id.* at 180; *see also Kurokawa II*, 351 Or at 192 (noting that the court in *Meharry* "discussed the van's continuing operability at the time of the search only to correct the Court of Appeals' statement that the initial exigency no longer existed when the police searched the van").

Similarly, here, defendant's car was mobile at the time it was stopped. That exigency persisted at the time of the search despite the intervening break in contact with the vehicle and the lapse of time. *See, e.g., Meharry*, 342 Or at 180 ("[T]he exigency that permits the police to conduct a warrantless search of a mobile vehicle arises from the fact that the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." (Citations and internal quotation marks omitted.)). As we noted in our prior opinion, defendant's car continued to be the subject of the officers' ongoing investigation, and

> "[n]othing occurred between the moment of the initial encounter and the time the officers searched defendant's car that rendered the vehicle immobile. The car had not been impounded, the car was not functionally disabled, and

> nothing prevented the car from being driven away once the officers relinquished control over it."

*Wiggins*, 245 Or App at 127. That conclusion is consistent with *Meharry*.

We need not go further and decide when a "mobile" vehicle ceases to be mobile by virtue of police delay. The Supreme Court has made clear that the automobile exception has only two requirements: (1) the vehicle must be mobile at the time that it is first encountered by police and (2) probable cause must exist for the search of the vehicle. *Kurokawa II*, 351 Or at 187. Under the facts in this case, those requirements are met. Thus, defendant's motion to suppress should have been denied.

Reconsideration allowed; former opinion modified and adhered to as modified.