Argued and submitted April 26, 2016, affirmed September 20, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JENNIFER MARIE VON FLUE,
*Defendant-Appellant.*

Linn County Circuit Court
14CR09323; A158187

404 P3d 1030

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**EGAN, J.**

Defendant appeals a judgment of conviction for delivery of methamphetamine, ORS 475.890, and assigns error to the trial court's denial of her motion to suppress evidence resulting from a warrantless search of her vehicle. She asserts that the search was not justified by the automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution, because her vehicle was not mobile when the officer encountered it in connection with a crime. We conclude that the search was lawful under the automobile exception and, therefore, affirm.

In reviewing the trial court's ruling on a motion to suppress, we view the facts consistently with the trial court's findings and decision on the motion. *State v. Meharry*, 342 Or 173, 175, 149 P3d 1155 (2006). In this case, the relevant facts are undisputed. At 12:50 a.m., on June 11, 2014, Davis, a City of Albany police officer, was patrolling Jack's Truck Stop, which is known for high levels of drug trafficking and prostitution. Davis noticed defendant's vehicle, a newer Mercedes SUV, in the parking lot; defendant, another woman, and a male bicyclist were all standing immediately outside the vehicle. The other woman and the man both appeared to Davis to be transient drug users.

Davis turned his patrol car around and parked so that he could observe defendant and her companions. As he did so, Davis observed the male cyclist hurriedly ride away. Defendant and the other woman got into the SUV and drove over to the fuel island at Jack's. While the vehicle was at the fuel island, Davis drove his patrol car around Jack's and ran the license plates on the SUV; he learned that defendant was the SUV's registered owner and that she lived in Salem. According to Davis, Salem is the primary source of the methamphetamine and heroin sold in Albany. A criminal history check of defendant revealed that she was on supervision for unlawful delivery of methamphetamine and that she had a number of drug-related convictions.

After a few minutes, defendant drove the SUV from the fuel island back to the same area where it had originally been parked. Defendant and the other woman got out of the vehicle and walked up to the driver's side window of another

vehicle that had pulled in and parked right next to the SUV. Davis recognized the driver of the newly arrived vehicle as Morton. Morton, who had a prior drug conviction and multiple prior contacts with police relating to drugs, did not get out of his vehicle to go into the convenience store, nor did he pull up to get gas at the fuel island.

Davis pulled his patrol car up and parked approximately 20 feet from defendant's SUV. He got out and approached defendant and Morton, who stopped their conversation when they noticed him. Morton announced that he needed to go to Walmart, and drove away. Davis began a conversation with defendant, who admitted not knowing the name of the other woman who was with her. Davis, however, recognized the woman as someone he had met on previous occasions, and who had admitted to using methamphetamine in the recent past. After Davis told defendant that he was concerned that she was engaged in drug activity, defendant told him that she had recently left a drug-treatment facility and that she had just been released from a jail term she had been serving for a probation violation. Davis requested, and defendant gave, consent to search her purse. Aside from some wadded up cash, Davis found nothing notable in the purse. Davis then requested defendant's consent to search her vehicle, which she refused.

Davis, who was a canine handler, then deployed his police dog to sniff around defendant's vehicle for drugs. The dog alerted twice on defendant's SUV to the presence of drugs. Davis then conducted a warrantless search of defendant's vehicle and found large amounts of illegal drugs and cash, as well as weapons. Davis arrested defendant, and she was charged with multiple drug and weapons offenses.

Defendant filed a pretrial motion to suppress the evidence discovered during the warrantless search of her vehicle. The state argued that the warrantless search was permitted under the automobile exception to the search warrant requirement, and the trial court agreed and denied defendant's motion. Defendant then entered a conditional no-contest plea to and, ultimately, the trial court entered a judgment of conviction for one count of delivery of methamphetamine.

On appeal, defendant assigns error to the trial court's denial of her motion to suppress. Although she agrees that, by the time the officer saw her drive her vehicle the second time, he had "reasonable suspicion to believe that defendant was involved in drug activity," defendant contends that the warrantless search of her vehicle "was not justified by the automobile exception because the [vehicle] was not mobile when [the officer] encountered it in connection with a crime." (Boldface omitted.) That is, in her view, for the exception to apply, her vehicle had to be moving at the moment the officer first observed it. The state responds that the vehicle was mobile for purposes of the automobile exception, and that the exception applies when an officer lawfully encounters a mobile vehicle and develops probable cause that evidence of criminal activity is in the vehicle. We review the trial court's application of the automobile exception for legal error. *State v. Finlay*, 257 Or App 581, 583, 307 P3d 518, *rev den*, 354 Or 389 (2013).

Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." "Under that section, a search conducted without a warrant is deemed unreasonable unless it 'fall[s] within one of the few specifically established and carefully delineated exceptions to the warrant requirement.'" *Meharry*, 342 Or at 177 (quoting *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988) (brackets in *Meharry*)). The automobile exception to the warrant requirement allows officers to "search a car [without a warrant] if they have probable cause to believe that the car contains evidence of a crime and the car is mobile at the time they stop it." *State v. Andersen*, 361 Or 187, 189, 390 P3d 992 (2017); *see State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986) (recognizing automobile exception to warrant requirement of Article I, section 9). That is, the automobile exception applies "provided (1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." *Brown*, 301 Or at 274. "The automobile exception does not apply, however, if the car is 'parked, immobile and unoccupied at the time police'" encounter it in connection with investigating a crime. *Andersen*, 361 Or at 189

(quoting *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986)); *see State v. Kurokawa-Lasciak*, 351 Or 179, 181, 263 P3d 336 (2011) ("'automobile exception' to the warrant requirement of Article I, section 9, of the Oregon Constitution, does not permit a warrantless search of a defendant's vehicle if the vehicle is parked, immobile, and unoccupied at the time that police encounter it in connection with a crime").

Defendant in this case does not contend that the search of her vehicle was not supported by probable cause. Instead, as noted, the parties disagree about whether defendant's vehicle was mobile at the time officers encountered it in connection with a crime.[1] Thus, that is the issue we must resolve in this case.

The line between a vehicle that is considered mobile for purposes of the automobile exception, and one that is "parked, immobile and unoccupied" has been explored by the Supreme Court in recent cases. In *Andersen*, its most recent case on the subject, the Supreme Court contrasted circumstances in which a vehicle is considered "mobile" for purposes of the automobile exception with circumstances in which it is not to illustrate that line. The court discussed *Brown, Kock, Meharry*, and *Kurokawa-Lasciak* in explaining the application of the automobile exception to the circumstances presented in *Andersen*.

To begin with, in *Brown*, the case in which the Supreme Court first recognized the automobile exception, officers had stopped a car as it drove on the highway based on reasonable suspicion that the driver of the car had committed a crime. Under those circumstances, the car was mobile. As the court explained in that case, the exigency that permits officers to conduct a warrantless search of a mobile vehicle arises from the fact that the vehicle can quickly be moved out of the area. 301 Or at 275. "The court was careful to make clear, however, that the mere fact that a vehicle is operable does not mean that it is mobile for the purposes of

---

[1] This case was briefed and argued before the Supreme Court decided *Andersen*. We note that, in support of her argument in this case, defendant relies, understandably, on cases that we decided in between the Supreme Court's decision in *Kurokawa-Lasciak* and its decision in *Andersen*. However, as discussed, the court clarified the application of the automobile exception in *Andersen*.

the Oregon automobile exception." *Andersen*, 361 Or at 194 (citing *Brown*, 301 Or at 277).

In contrast with *Brown*, in *Kock*, the defendant had parked his car at work during his shift. "Midway through his shift, he took merchandise from the store where he worked, put it in his parked car, and then returned to work." *Andersen*, 361 Or at 194. Under those circumstances, the car was not considered mobile for purposes of the automobile exception. The court explained that "any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime" must be authorized by a warrant or fall within some other exception to the warrant requirement. *Kock*, 302 Or at 33.

As the court in *Andersen* explained, "*Brown* and *Kock* arose out of factual situations that fell at either end of a spectrum." 361 Or at 195. Although the court in those cases "sought to provide guidance to officers and citizens, neither case had occasion to consider factual situations that fall somewhere between the facts in those two cases." *Id.* However, the court considered two such cases in *Kurokawa-Lasciak* and *Meharry*.

> "In *Meharry*, a local fire chief saw the defendant driving erratically and reported his observations to a local police officer, who came out of the police station. When he did, he saw the defendant drive past him and park her van at a convenience store before he could stop her on suspicion of driving under the influence of intoxicants."

*Andersen*, 361 Or at 195. The defendant got out of her vehicle and went into the convenience store.

> "The officer pulled his car behind the defendant's parked van, stopped it from leaving, and searched her van for evidence of intoxicants after developing probable cause that the defendant had been driving under the influence."

*Id.* The search, in those circumstances, fell within the automobile exception. "As the court framed the question, the issue was whether stopping 'an otherwise mobile car from resuming its journey,' as the officer had done in *Meharry*, differed for purposes of the Oregon automobile exception

from causing a moving car to stop, as the officer had done in *Brown*." *Id.* The court concluded that it did not and "held that the automobile exception applied to a vehicle that momentarily had come to rest." *Id.* at 196.

In contrast, "[i]n *Kurokawa-Lasciak*, the facts fell on the other side of the line that the court had drawn in *Brown* and *Kock*." *Id.* In that case,

> "the defendant was gambling at the Seven Feathers Casino when casino employees began to suspect that he was laundering money. The casino prohibited the defendant from engaging in further cash transactions for 24 hours and posted his photograph in its cashiers' cages. Early in the morning, the defendant attempted to engage in a cash transaction and, in the course of that attempt, reached into the cashier's cage and grabbed his photograph. Approximately 10 minutes later, he left the casino, got into his van, and drove to a gas station. Fifteen minutes after that, he returned to the casino, parked his van, got out, and began walking back towards the casino. After he had gotten approximately 30 feet from his van, an officer saw [the] defendant walking toward the casino and stopped him on suspicion of money laundering. Neither that officer nor another officer who arrived later saw the defendant drive his van."

*Id.* (internal citations omitted; citing *Kurokawa-Lasciak*, 351 Or at 181-82). The Supreme Court held that the automobile exception did not justify a warrantless search of the defendant's vehicle under those circumstances. It explained that the exception does not apply whenever a car is operable, but instead, "the vehicle that the police search must be mobile at the time that police encounter it in connection with a crime." *Kurokawa-Lasciak*, 351 Or at 192. Given that, when the officer stopped the defendant, the defendant was 30 feet from his vehicle and that when the defendant was questioned he was not near the van, the court concluded that there was no evidence from which the trial court could have found that the van was mobile when officers encountered it in connection with a crime. *Id.* at 194.

Having recounted the circumstances in all of those cases, in *Andersen*, the court "reaffirm[ed] that the Oregon automobile exception applies if the automobile is mobile

when the officers first encounter it in connection with the investigation of a crime." 361 Or at 197. That case involved the warrantless search of a vehicle that, at the time officers came upon it, was stopped in a parking lot, with the engine running and the defendant behind the wheel. An officer had arranged a drug purchase through an informant who, in turn, contacted a third party—Compton—to set up the sale. Compton told the informant, while the officer was listening, that the defendant would be driving a Jeep or a red sedan to an agreed upon parking lot location to complete the drug transaction. The officer then also heard Compton give the informant "a running account of the car's progress as it approached and entered" the parking lot. *Id.* The officer did not see the vehicle pull into the parking lot; instead, the vehicle had already come to rest in the parking lot when the officers stopped it. In our opinion in that case, we had held that the automobile exception did not apply under those circumstances, explaining that, under the Supreme Court's cases on the subject, "for a vehicle that was not moving when stopped by police, the exception requires the vehicle be * * * *moving* at the time" police encounter it in connection with a crime. *State v. Andersen*, 269 Or App 705, 713, 346 P3d 1224 (2015), *rev'd*, 361 Or 187, 390 P3d 992 (2017) (emphasis added).

On review, the Supreme Court reversed and explained that an officer is not required to see the vehicle in question in motion at the moment he or she first encounters it for the automobile exception to apply. The court observed that Compton's account of the vehicle's progress as it approached the parking lot confirmed that the vehicle was mobile. Furthermore, although the vehicle was stopped in the parking lot when officers approached it, the court explained that, under the circumstances, the trial court

"reasonably could have found that defendant had stopped her car only momentarily—just long enough to complete the drug transaction—before resuming her trip. Defendant's momentary pause in her trip is no different from the defendant's momentary stop at the convenience store in *Meharry* before resuming her journey. Indeed, in *Meharry*, the defendant had turned off the engine, stepped out of her van, and stepped into the convenience store. In this case, defendant

remained in the driver's seat of her Jeep with the engine running while Compton stepped out of the Jeep to complete the drug transaction. If the defendant's van in *Meharry* remained mobile for purposes of Oregon's automobile exception, then it is difficult to see why defendant's Jeep was not also mobile. When the officers stopped her Jeep, it was not 'parked, immobile, and unoccupied' as the defendants' cars were in *Kock* and *Kurokawa-Lasciak*."

*Andersen*, 361 Or at 198. Because the court in *Andersen* perceived "no meaningful distinction" between that case and *Meharry*, it concluded that the Jeep was mobile when officers encountered it in connection with their investigation of the drug sale. *Id.* Accordingly, the warrantless search came within the automobile exception to Article I, section 9.

Here, defendant's argument is grounded on the premise that, for the automobile exception to apply, the vehicle must be moving when the officer first encounters it in connection with a crime. She asserts that, absent those circumstances, "the exception does not apply irrespective of how recently the vehicle had been driven or whether the vehicle became mobile at some point during the course of the encounter." We disagree.

First, contrary to defendant's argument, in our view, the officer did not encounter defendant's vehicle in connection with a crime only in the first moment that he observed it in the truck stop parking lot and noticed that it was newer and nicer than other vehicles around it. In other words, contrary to defendant's contention, the fact that the vehicle was not moving at the first moment the officer saw it (regardless of the fact that the officer had no reasonable suspicion of drug activity at that point), does not mean that the automobile exception cannot apply. Instead, the relevant "encounter" occurred when the officer observed defendant and her vehicle and developed reasonable suspicion that defendant was engaging in drug activity. As defendant concedes, by the time he observed defendant drive her car from the fuel island back to the parking area, the officer had reasonable suspicion of drug activity connected to the car. And, because the officer had observed defendant driving the vehicle by the time he had reasonable suspicion, it was clear that the vehicle was mobile.

Furthermore, as in *Andersen* and *Meharry*, the fact that the vehicle was not moving and defendant was standing beside it by the time the officer stopped her does not render the automobile exception inapplicable here. As in those cases, under the circumstances presented, the trial court reasonably could have found that defendant stopped her car to complete a drug transaction before resuming her trip. Defendant's act of stopping to talk with Morton while standing immediately beside her car is like the circumstances in *Andersen* and *Meharry*. Indeed, as the court emphasized in *Andersen*, in *Meharry*, the defendant had stepped away from her vehicle and into a convenience store and the vehicle was, nonetheless, mobile for purposes of the automobile exception. *Andersen*, 361 Or at 198; *Meharry*, 342 Or at 180-81. In this case, defendant remained beside her vehicle while the officer approached. Under the circumstances, and in contrast to the circumstances in *Kock* and *Kurokawa-Lasciak*, when the officer stopped defendant, the vehicle was mobile for purposes of the automobile exception.

In light of the foregoing, the trial court did not err in denying defendant's motion to suppress.

Affirmed.